AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: ___EMJ 6/06/2024

# UNITED STATES DISTRICT COURT
### for the
Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>2117 Silver Fox Drive, Edmond, Oklahoma 73003 WITH ACCESS AND<br>CONTROL OF THE ATTACHED GARAGE, OUTBUILDINGS,<br>VEHICLES, CURTILAGE, AS WELL AS PERSON FOUND AT THE<br>PREMISES | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. MJ-24- 498-SM |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference herein.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2252A(a)(5)(B) | Possession of Material Containing and Access with Intent to View Child Pornography |

The application is based on these facts:

See the attached Affidavit of FBI Special Agent Mari Flores, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 USC § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Marisol Flores, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/6/24

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Marisol Flores, a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

## INTRODUCTION

1.    I have been employed as an SA with the FBI since May 2015, and I am currently assigned to the Oklahoma City Division.  Since joining the FBI, I have been involved in investigations of child exploitation matters and computer crimes against children.  I am currently assigned to investigate violations of federal law involving the exploitation of children.  I have gained expertise in conducting such investigations through in-person trainings, classes, and everyday work in my current role as an SA with the FBI.

2.    As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.    I am investigating the online activities of Curtis Shane Kessler, who is believed to reside at 2117 Silver Fox Drive, Edmond, Oklahoma 73003 (the "**SUBJECT PREMISES**," as further described in Attachment A).  As shown below, there is probable cause to believe that Curtis Shane Kessler ("Kessler") possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  I submit this Application and Affidavit in support of a search warrant authorizing a search of the **SUBJECT PREMISES**.  Located within the **SUBJECT PREMISES**, I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, specifically, Kessler's work device that he uses for the purpose of accessing and viewing child pornography, and any other electronic devices to which Kessler could have transferred files.  I request authority to search the entire

1

**SUBJECT PREMISES**, including the residential dwelling and the curtilage of the residence, including, but not limited to storage buildings, vehicles located on the **SUBJECT PREMISES**, the persons at the **SUBJECT PREMISES** at the time of the search, and any computer (as broadly defined in 18 U.S.C. § 1030(e)) reasonably believed to belong to or have been used by Kessler located therein, where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

4.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the foregoing violations are presently located at the **SUBJECT PREMISES**.

**DEFINITIONS**

5.      The following definitions apply to this Affidavit and Attachment B:

    a. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

    b. "Child Sexual Abuse Material" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is,

2

or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

c. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

d. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

e. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software,

3

documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alphanumeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

f. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

g. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

i. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted,

4

or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* U.S.C. § 2256(2)(A).

j. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

k. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as

5

well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

l. A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

m. A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as HyperText Mark-up Language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text transport Protocol ("HTTP").

## BACKGROUND OF THE INVESTIGATION

6.      On or about May 30, 2024, information was provided to the FBI by an employee of Standley Systems,[1] detailing that Kessler, who is employed by Standley Systems, was utilizing his work-issued electronic device to access and view Child Sexual Abuse Material ("CSAM"). Kessler has been employed with Standley Systems for over 15 years. His current position within the company, which he has held for approximately 10 years, is a system administrator for the company's IT clients. As an employee for Standley Systems, Kessler was issued a Dell Precision company laptop in August of 2021, with serial number B0FZ3B3. With regard to Kessler's use of the company-issued laptop,

---

[1] Standley Systems' business was established in 1934 and supports other businesses in the Oklahoma area with technology tools and resources, such as printers, scanners, document solutions, and information technology ("IT") services.

there is a portion of Standley Systems' corporate policy manual that states:

> In order to protect the interests of the Standley's network and our fellow employees, Standley Systems reserves the right to monitor or review all data and information contained on an employee's company-issued computer or electronic device, the use of the Internet or Standley's intranet. We will not tolerate the use of company resources to create, access, store, print, solicit, or send any materials that are harassing, threatening, abusive, sexually explicit, or otherwise offensive or inappropriate.

Kessler has acknowledged the cooperate policy manual numerous times throughout his career with Standley Systems, most recently on February 24, 2023.

7.    According to a Standley Systems employee, the company recently acquired ActivTrak,[2] an employee monitoring software, to track productivity as the company began to have remote employees. ActivTrak takes screenshots of online and electronic activity on the company-issued devices as employees are actively working. Kessler began working remotely from the **SUBJECT PREMISES** on May 28, 2024. This was due to Kessler's upcoming plan to move to Texas in the third week of June 2024.[3] On May 15, 2024, one of the company's ActivTrak licenses was utilized to monitor Kessler's work productivity. On May 28, 2024, an employee of Standley Systems, using ActivTrak, began monitoring Kessler's company-issued laptop activity. The employee noticed Kessler's company-issued laptop displaying items that were pornographic in nature. The following day, May 29, 2024, the employee monitored Kessler's company-issued laptop activity again and

---

[2] ActivTrak is a workforce productivity and analytics software company that helps teams understand how people work, whether in the office or remotely. Their cloud-based user productivity monitoring platform collects and analyzes data and provides insights that help mid-market enterprises be more productive and compliant.

[3] Social media posts by Kessler's spouse confirm they are moving to Crockett, Texas.

observed Kessler's work-issued laptop displaying child pornography and search terms associated with child pornography.

8.      On May 30, 2024, FBI investigators were made aware of the information above and requested consent from Standley Systems to observe the ActivTrak displays associated with Kessler's work-issued laptop. Standley Systems consented to FBI investigators' request and permitted investigators to review the ActivTrak information. In response to the request, Standley Systems create an ActivTrak account for investigators to utilize. On May 30, 2024, investigators, using ActivTrak, confirmed the displays on Kessler's work-issued laptop contained CSAM.

9.      The screenshots that ActivTrak captured from Kessler's company-issued laptop and observed by investigators, included the following:

LT-SOKC-BOFZ3B3[4]

skessler@standleys.com[5]

10.     The following descriptions were observed by FBI investigators on ActivTrak from ActivTrak's monitoring on May 29, 2024:

a.      Description: skessler@standleys.com_2024-05-29_13-12-06U.jpg:[6] The screenshot displayed what appears to be laptop activity utilizing dual monitors. The image on the left appeared to be work that Kessler was conducting for Standley Systems via email, as his photo was located on the upper righthand side of the screen

---

[4] The listed serial number, BOFZ3B3, appears to have an "O" where there should be a "0."
[5] This is Kessler's work email address.
[6] The screen capture title from ActivTrak shows the email of the user being monitored, the date of the screen capture, and the time of the capture.

and his e-mail inbox filled the rest of the screen. The image on the right contained a webpage with, "fo.xxxoba.ru" in the address bar and what appeared to be a ready-to-play video at its center. The frozen image contained a yellow border with a broader boarder on the bottom, containing red phrases, "DOWNLOAD 579 VIDS" and "GET ONLINE PASS." The top of the right-side monitor image displayed several tabs, and the one displayed was "fo.xxxoba.ru/." Other tabs queued included: "kitkato.xxxcm.ru," "Naked Pussy Like To Fun," "Fresh New Teens Porn Links," and "tr.xxxalt.ru." On the far right of the tab bar was a white mask with a purple background and the words, "Private Browsing."[7] The displayed, frozen image of the video depicted a prepubescent female with dark hair wearing a light-blue, short-sleeved t-shirt with what appeared to be white diapers tugged down onto her hips, exposing her anal area. She was lying on a flat surface with lightly covered sheets on her right side and her legs slightly bent and folded towards her chest, facing the camera. The mid-section of an adult male was depicted to the right of the prepubescent female, and he was wearing a white piece of clothing containing a drawstring around the waist. With his left hand, he was holding his erect penis, which was being inserted into the prepubescent's anal area.

b.    <u>Description</u>:    skessler@standleys.com_2024-05-29_20-31-30U.jpg: The screenshot displayed what appears to be laptop activity displayed on dual monitors. The image on the left appeared to be work that Kessler was conducting

---

[7] This meant Kessler was engaged in a private browsing session within the Firefox internet browser, indicating his efforts to mask or avoid detection of his browsing history.

for Standley via email, as his photo was on the upper righthand side of the screen and his e-mail inbox filled the rest of the screen. The image on the right contained a webpage, "Alyona.shop/index.php" in the address bar, with a series of thumbnail images and "Gallery" selections available. In the top, center of the webpage was an advertisement window for "REAL CHILD EXTREME," and additional information provided stated, "Hard CP Photos and Shocking CP Videos." On the far right of the tab bar was a white mask with a purple background and the words, "Private Browsing."[8] One of the thumbnails depicted what appeared to be two prepubescent females kneeling or crouching in a white bathtub that was partially filled with water. Their heads and faces were looking in the direction of what appeared to be a prepubescent male, who was standing in the bathtub. There appeared to be a concrete wall behind him. All three prepubescent juveniles were not wearing visible clothes, and the two prepubescent females had their mouths positioned over the prepubescent male's groin area. Another thumbnail depicted a prepubescent female lying on her back on a surface covered in a white sheet. She was wearing only a white, short-sleeved t-shirt bunched up around the top of her chest, and she was facing the camera. An adult male was standing at the bottom of the image, facing the prepubescent female, with his erect penis extended over her chest. The prepubescent female was holding the erect penis with both of her hands.

11.     According to the Standley Systems employee, Kessler disabled a company

---

[8] This meant Kessler was engaged in a private browsing session within the Firefox internet browser, indicating his efforts to mask or avoid detection of his browsing history.

software called Screen Connect during the times Kessler was viewing the above-described CSAM. The software Screen Connect allows employees to view one another's screens when assisting with IT issues.

12.     During FBI investigators' review of Kessler's work-issued computer displays, via ActivTrak, Kessler accessed and viewed CSAM on the following dates: May 28, 2024, May 29, 2024, and May 31, 2024.

13.     The City of Edmond utilities for the **SUBJECT PREMISES** belong to Curtis Shane Kessler and list an email address of c.s.kessler18@gmail.com. Records reveal Kessler opened the utilities account on August 31, 2023. One vehicle, a 2018 black Nissan Sentra, bearing Oklahoma license plate JES-417, is registered to Curtis Shane Kessler at the **SUBJECT PREMISES**. Open-source database checks reveal the **SUBJECT PREMISES** as Kessler's current residence, with a former address of 2753 Cambridge Court, Oklahoma City, OK 73116.[9] Oklahoma State Court records show Kessler married his wife, Kimberly Kessler ("Kimberly"), in November 2018. Kimberly's driver's license, issued on October 26, 2023, lists the **SUBJECT PREMISES** as her address. Social media postings reveal Kessler and Kimberly adopted a two-year-old son in May 2024.

14.     Physical surveillance was conducted at the **SUBJECT PREMISES** on June 1, 2024, during which FBI investigators observed a blue Dodge Ram 1500 truck arrive and

---

[9] This is the address listed on Kessler's current driver's license, which was issued on November 18, 2021, prior to the time Kessler opened utilities at the **SUBECT PREMISES**. Kessler's driver's license expires on October 31, 2025.

11

back into the driveway. Shortly after the truck arrived, Kessler exited the driver's side of

the vehicle, and Kimberly Kessler exited the passenger side of the vehicle. Kimberly

entered the **SUBJECT PREMISES**, and Kessler proceeded to open the rear driver's side

door and carry a young child out. Kessler placed the child on its feet, and the child entered

the **SUBJECT PREMISES**. Kessler then removed items out of the bed of the truck,

including large cardboard boxes consistent with moving boxes, and took the items inside

the **SUBJECT PREMISES**. The license plate on the blue Dodge Ram 1500 that Kessler

was operating bore a Texas plate with characters NKX-0369. This vehicle is registered to

Ronald Glen Kessler ("Ronald") and Denise Rene Kessler ("Denise"), at 555 Old Latexo

Rd, Grapeland, Texas 75844. Open-source database checks reveal Ronald and Denise are

Kessler's relatives, who both live at 555 Old Latexo Rd, Grapeland, Texas 75844.[10] That

day, FBI investigators also observed a black, enclosed cargo Hawk Line trailer back into

the driveway next to the blue Dodge Ram 1500.

    15.    On June 3, 2024, a pole camera was installed to capture the public view of

the **SUBJECT PREMISES**.

    16.    Based on my training and experience, individuals who view and possess

CSAM will use multiple devices to store and access their collection of CSAM. These

individuals will maintain their collection of CSAM where it is readily available, easy, and

convenient to access. Because Kessler has been identified as a systems administrator, who

is an expert in technology and likely savvy in methods of storing material, including his

---

[10] Grapeland, Texas is approximately thirteen miles away from Crockett, Texas, which is
where Kessler and his family plan to move.

CSAM, I believe Kessler maintains his collection of CSAM wherever he is, including the **SUBJECT PREMISES**, as he is now a remote employee working from the **SUBJECT PREMISES**. I also believe Kessler has attempted to avoid detection of accessing and viewing CSAM on his company-issued laptop by disabling the company's software, Screen Connect, to hide his illegal activity. I believe Kessler used, and continues to use, his company-issued laptop to access, view, and possess CSAM, and I am seeking authorization to search Kessler's devices where he is likely storing CSAM.

17.    I am aware that computers and computer-related media are portable, and that evidence can be stored on media as small as a fingernail-sized memory card. I have learned from other law enforcement officers who have executed search warrants in investigations of this nature, and from my own training and experience, that computers and digital devices containing CSAM and associated communications can be located in vehicles and on the persons of occupants located on the premises. In addition, I am aware that people frequently transport their computers and cellular telephones on their person and in their vehicles. Due to the portable nature of electronic storage devices and the ease with which they can be transported and hidden, I am requesting authority to search any vehicles on the **SUBJECT PREMISES**, as well as persons if on the **SUBJECT PREMISES**, when the search warrant is executed.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

18.    Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related

documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

14

19.    In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child sexual abuse material where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues.  In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

20.    Furthermore, I know that modern tablets (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "sync" with a traditional desktop or laptop computer.  The purpose of syncing a tablet to a traditional computer is to back up data that is stored on the tablet so that it is not permanently lost if the portable tablet is lost or damaged.  Additionally, tablet users may move files off the tablet and onto a computer to free up storage space on the tablet.  Similarly, computer (*e.g.*, desktop computers, tablets, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer.  For this reason, I am seeking authorization to seize all computers and digital file storage devices reasonably believed to belong to or have been used by Curtis Shane Kessler at the **SUBJECT PREMISES**—not any particular computer.

21.    Finally, I know that many modern smart tablets and smart cell phones, including Apple and Samsung-brand tablets and cell phones, can be encrypted by the user using his finger and/or thumbprint or facial image to lock and unlock the device.  Without

15

the user's prints, the devices are difficult, if not impossible, for law enforcement personnel to unlock.   Accordingly, I am requesting that, to the extent law enforcement seizes any tablet or smart cell phones or other computer described in Attachment B during a search of the **SUBJECT PREMISES** (described in Attachment A), and if such device(s) features such encryption, then law enforcement may, while executing the search warrant at the **SUBJECT PREMISES**, use Kessler's finger and/or thumbprint and/or facial image with any such encryption feature to attempt to unlock the device.

## CONCLUSION

22.    Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that Curtis Shane Kessler, residing at the **SUBJECT PREMISES**, possessed and accessed with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).    Additionally, there is probable cause to believe that evidence of the criminal offenses is located at the **SUBJECT PREMISES**, and this evidence, listed in Attachment B to this Affidavit and incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property that is or has been used as the means of committing the foregoing offenses. As described in the probable cause section, there is probable cause to believe Curtis Shane Kessler violated the aforementioned statute.    Therefore, I respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.


MARISOL FLORES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Signed and sworn before me this 6 day of
June, 2024.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE


17

## ATTACHMENT A

### DESCRIPTION OF THE PREMISES

### 2117 Silver Fox Drive, Edmond, OK 73003

The **SUBJECT PREMISES**, 2117 Silver Fox Drive, Edmond, Oklahoma 73003, is located within Oklahoma County, in the Western District of Oklahoma. The **SUBJECT PREMISES** is a single family, single-story dwelling. The single-family dwelling is constructed of reddish brick and beige siding, with a beige garage. The numbers "2117" are in black lettering on the upper right of the garage.



1

The search of the **SUBJECT PREMISES** includes the residential dwelling and the curtilage of the residence, which includes, but is not limited to, storage buildings, vehicles, and appurtenances. The search of the **SUBJECT PREMISES** also includes the search of any persons found at or arriving to the **SUBJECT PREMISES** during the execution of the search. These persons include, but are not limited to, Curtis Shane Kessler, whose date of birth is 10/XX/1986 and whose photo is depicted below:



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

Contraband, evidence, fruits, and instrumentalities related to Kessler's possession of and access with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), in any form, including, but not limited to:

1.     To the extent they are reasonably believed to belong to or be used by Curtis Shane Kessler: computer(s), as broadly defined in 18 U.S.C. § 1030(e) and all other digital file storage devices, including (but not limited to) desktop computers, smart phones, e-readers, tablets, thumb drives, SD cards, DVDs, compact discs, and external hard drives; all computer hardware, computer software; computer related devices and documentation; computer passwords and data security devices; videotapes; video recording devices; video recording players; and video display monitors that may be, or are used to visually depict child pornography or child erotica, display or access information pertaining to a sexual interest in child pornography, display or access information pertaining to sexual activity with children, or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.     Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

1

3.      In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

4.      Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the operator of the computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

2

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11.      To the extent they are reasonably believed to belong to or be used by Curtis Shane Kessler: any and all cameras, film, videotapes or other photographic equipment

3

capable of storing images or videos of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

12.    Any and all visual depictions of minors to see if they match images of minors in child pornography.

13.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.    To the extent they are reasonably believed to belong to or be used by Curtis Shane Kessler: any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

4

15.     Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

16.     To the extent they are reasonably believed to belong to or be used by Curtis Shane Kessler: any and all equipment associated with routers, modems, and network equipment used to connect computers to the Internet.

17.     If a smart cell phone or other computer, as described herein, is found that requires access by using a finger or thumbprint or facial recognition to unlock the device, then, while executing the search warrant at the **SUBJECT PREMISES**, a law enforcement officer may press the finger or thumbprint of Curtis Shane Kessler present at the **SUBJECT PREMISES** onto the device to try to unlock it or use their face to unlock the device via facial recognition.